State v. Gardner et al.

---

## THE STATE, BECKER AND OTHERS, PROSECUTORS, v. JAMES GARDNER AND OTHERS.

1. An assessment made by commissioners for improving Bergen Wood road appointed under the act approved April 9th, 1868, and its several supplements, which act requires that the costs and expenses of the improvements shall be raised by an equitable assessment on the lands fronting on the improvement in proportion to the benefit received, will be set aside when it appears that the assessments were made and levied indiscriminately on all the lots at a certain rate per lineal foot, and that the commissioners did not exercise their judgment on each separate lot to ascertain how much each was benefited.
2. Under the act, a new commission may be appointed, and new assessments made.

On *certiorari* to set aside assessments.

The defendants were appointed commissioners for improving Bergen Wood road, in the county of Hudson, by an act of the legislature approved April 9th, 1868. *Acts of* 1868,

904. Supplements were passed to this act on the 2d of April, 1869, (*Acts* 1869, 1294,) and on the 17th of March, 1870. *Acts* 1870, 861.

The writ of *certiorari* in this case was sued out by the prosecutors to set aside the proceedings of these commissioners. The reasons relied on, and so much of the case as is necessary to an understanding of the questions decided, will be found in the opinion of the court.

Argued before DALRIMPLE, DEPUE, and VAN SYCKEL, Justices.

For the prosecutors, *Stout*.

For the defendants, *Williamson*.

DEPUE, J. The first reason assigned for setting aside the proceedings of these commissioners is, that the road, as the lines are fixed, is not fifty feet in width in some parts thereof. The proviso in the first section of the act under which the commissioners were appointed expressly requires, that the said road shall 'not be made in width less than fifty nor more than sixty feet in any part thereof. *Acts* 1869, 904. The commissioners return that they adopted a plan which would give an uniform width of road throughout the entire line, but that to avoid buildings, as well as to straighten the course of the road, they decided to take less land from the west than from the east line, at or near Bergen tunnel, for the space of about three hundred feet. For this space the width of the road is narrowed. Throughout the residue of the route the width of the road conforms to the act. This objection comes too late.

The writ of *certiorari* was allowed at February Term, 1870. Granting a *certiorari* in cases of public interest is a matter of discretion, and the party will be denied relief if he has unreasonably delayed to apply for the writ. *State* v. *Hudson City*, 5 *Dutcher* 115; *State* v. *Water Commission-*

ers, &c., 1 *Vroom* 247 ; *State* v. *Newark*, 1 *Vroom* 303. The fifth section of the act requires the commissioners to submit their plans and valuations to a meeting of the land-owners on the line of the road, convened for the purpose; and the commissioners were not authorized to proceed with the improvement unless the plans and valuations were approved by so many of such owners as represented more than one-half of the value of the property liable to assessment under the act. A meeting of land-owners was convened by advertisements in a public newspaper, on the 28th of July, 1868, for the examination and approval of the plans and valuations which had been made by the commissioners. Two, at least, of the prosecutors attended that meeting. At this meeting the plans, were submitted, examined and formally approved by the requisite number of land-owners. The work on section one was put under contract on the 23d of September, 1868, bids for the work having been previously received in pursuance of public advertisements. It was completed in July, 1869, at the cost of $9,963.12, and the assessment made on the owners of lands for the expenses as early as August, 1869. The commissioners were appointed under an act of the legislature, and the work was executed under their supervision, and the only means of obtaining payment for the expenses incurred is by assessment on the land-owners under the provisions of the act. To permit the defeat of the project or deny the commissioners the power to proceed with the assessment because of any defect in the original plans, when ample opportunity was offered to make such objections available before the expenses were incurred, would be unreasonable and unjust.

The second and third reasons are founded on alleged irregularities which can only be made manifest by proof. No testimony has been taken on either side. The *ex parte* affidavits on which the writ was granted cannot be used on the final argument. The affidavits to be used on the hearing must be taken on four days' notice in accordance with

the rule. *Rules Sup. Ct. No.* 65; *Cooper* v. *Gilbraith*, 4 *Zab.* 219.

The fourth reason is that the commissioners did not take and subscribe the oath required by the act of 1868. The fifth section of this act prescribes that the commissioners, having first taken and subscribed an oath before a justice of the peace, to regulate and improve said road without favor or impartiality, shall proceed, &c. The form of this oath taken by the commissioners is, that they will, without favor, discharge the duties, and, with impartiality, exercise the powers devolving upon them as commissioners. The oath taken conforms better to the intention of the legislature in requiring the commissioners to be sworn than it would if it conformed literally to the language prescribed. Besides, by the supplement of April 2d, 1869, (*Acts* 1869, 1294,) the act of 1868 was amended in this respect, and the oath taken by the commissioners is substantially in accordance with the requirements of the amendatory act.

The remaining reasons, except the ninth, eleventh, and twelfth, may be disposed of in the same manner as the second and third reasons were. The irregularities at which those reasons are directed do not appear by anything that is before the court.

The ninth, eleventh, and twelfth reasons touch upon the legality of the assessment itself. It is objected in the first place that these assessments were prematurely made. By the third section of the act of 1868, the road, for the purposes of the improvement, was divided into three sections, the limits of which are specified. The work has only been undertaken on one section. The insistment of the prosecutors' counsel is, that no assessment for expenses can be made until the work is finished on all the sections. This construction of the act is unreasonable, and is inconsistent with the language of the seventh section, which is as follows: "The cost of widening, regulating, and improving said road shall be adjusted (each section to be considered separately,) by the commissioners hereinafter named in an equitable assessment,

which shall be a lien upon the lands to be paid by the owners on the line." No time is named when the assessments are to be made, and, inasmuch as the cost of the improvement for each section is to be assessed separately, the assessment may be made for the expenses of each section when the work on that section is finished.

The legality of the assessment is also assailed as being made on erroneous principles. The act requires that the costs and expenses of the improvement shall be raised by an equitable assessment on the lands fronting on the improvement, in proportion to the benefit received. The entire expenses were assessed on the lands along the whole line at $1.60 a foot. An assessment of expenses graduated by the frontage on the line of the improvement is erroneous. The commissioners must exercise their judgment as to the amount of benefit each lot receives, and the report must show that the assessment has been so made. *State* v. *City of Hudson*, 3 *Dutcher* 214; *State* v. *Jersey City*, 4 *Dutcher* 500; *State* v. *City of Hudson*, 5 *Dutcher* 105; *State* v. *Town of Bergen*, 1 *Vroom* 307. The commissioners certify in their return "that the subject of the assessment was considered with reference to the equitable amounts to be paid by said owners in proportion to benefits received; the said assessment was found to reach $1.60 per foot, being based on the totals which follow, and becoming the actual cost of work and labor bestowed." An entry in the minutes of their proceedings, a copy of which is returned, is as follows: "The committee examined frontage and calculate the sums due as increased assessments, and consider the total sum to be paid and the precise amount of frontage to be taxed at $1.60 per foot," is all the additional information on the subject. The precise import of these statements is a matter of doubt, but when taken in connection with the fact that the whole length of the section along which the assessments were made was about one mile, and the fact that they were levied indiscriminately on all the lots at a certain rate per lineal foot, it is manifest that the commissioners did not exercise their judg-

ment on each separate lot, to ascertain how much each was benefited.

For this reason the assessment must be set aside. A commission to make new assessments will be appointed by the court on application made. The second section of the supplement of 1870 (*Acts* 1870, *p.* 864,) authorizes the appointment of such commission.

Assessment set aside.

DALRIMPLE and VAN SYCKEL, Justices, concurred.

CITED *in State, Little, pros.,* v. *Newark,* 7 *Vr.* 172.